[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO REARGUE AND FORRECONSIDERATION (NOS. 108.00 AND 108.50)
The marriage of the parties was dissolved on an uncontested basis on April 26, 1988. Prior to the dissolution, the parties had been joint owners of the marital home at 57 Marchant Road in Stratford, Connecticut. The parties agreed on an appraised value for the home of $200,000. In return for the plaintiff's quitclaim of her interest in the home to the defendant, the defendant was to pay the plaintiff the sum of $65,564. That was to be paid as follows: $35,000 within forty-five days of the judgment, and "the balance of $30,564 will be due to the plaintiff wife from defendant husband one year from the date of the refinance closing and the transfer of the house to defendant husband on demand together with nine percent interest. Thirty days prior to the due date of said demand note, defendant husband will notify plaintiff wife that said defendant husband can or cannot pay said note. If defendant husband cannot pay said note, the plaintiff wife will postpone demand for the payment up to six months to allow the sale of the house and interest will continue to accrue at the rate of nine percent until that obligation is paid off."
At the time of the dissolution, the home was encumbered by a first mortgage in the approximate amount of $77,000. On May 20, 1988, about a month after the dissolution, the husband refinanced the home by securing a new first mortgage in the sum of $155,000. The prior first mortgage was paid off, and there is no dispute that the defendant paid the plaintiff the $35,000 he was required to under the terms of the dissolution judgment. The refinance and subsequent payment to the plaintiff should have left the defendant with approximately $43,000 ($155,000 less $77,000 less $35,000).
The problem began when the defendant, though apparently having the funds to do so, failed to pay the plaintiff the balance of $30,564 as he was required to do one year from the date of the refinance closing. Further, though the dissolution judgment provided that the plaintiff would postpone demand for up to six additional months to allow the sale of the house, there was no evidence before this court of an attempted sale. In fact, CT Page 11879 an examination of the court file indicates that this matter lay dormant and inactive for approximately nine years from the date of the dissolution until the plaintiff filed her motion for contempt in August, 1997.
Unfortunately, the home, which had been valued by the parties at $200,000 at the time of the dissolution in 1988, is currently valued at $140,000 (at least as shown by the defendant on his current financial affidavit). Thus, there is now no equity in the property. In 1991, the defendant had signed a demand note secured by a mortgage deed in favor of the plaintiff. However, given the current valuation of the property, the plaintiff's recourse on that mortgage is meaningless. One is left to wonder why the plaintiff did not act more promptly to preserve her rights against the property at a time when the property was of higher valuation.
Regardless, the plaintiff filed this motion for contempt against the defendant for his failure to pay the balance due the plaintiff. On October 23, 1997, the court held a hearing at which time it made a finding of an arrearage of $62,309.25, together with counsel fees of $1,500. The clerk's marking on the motion for contempt does not indicate a finding of contempt, per se. However, in the event that the defendant was not found to be in contempt on October 23, 1997, the evidence on the rehearing on November 13, 1997, is certainly persuasive that the defendant had the ability to pay the balance due the plaintiff, but did not. Therefore, the defendant is found in contempt.
The problem is not the finding of contempt, inasmuch as what remedy or relief can be afforded to the plaintiff. On October 23, 1997, the court ordered the defendant to pay $50.00 per month against the arrearage. This was, concededly, a nominal amount. The reasons for this nominal order were several:
(1) the defendant's affidavit showed weekly expenses in excess of weekly income;
(2) the court was giving effect to the private, 1991 agreement between the parties, whereby the defendant would pay interest only on the demand note at a rate of $50.00 per month; and,
(3) the delay occasioned by the plaintiff in waiting nine years to protect her rights, and the CT Page 11880 concomitant decline in the property's valuation.
However, the plaintiff has now persuaded the court that the defendant should shoulder more than a nominal burden. As the plaintiff indicates, the defendant has remarried and his current wife contributes to household and shelter expenses. Further, the court subscribes, in part, to the plaintiff's comparisons to child support cases and the concept of a "self-support reserve." The court believes, then, that more than a nominal order should enter. However, the court declines to subscribe to the plaintiff's request that the court also order the defendant to pay a large lump sum, forthwith. The court does not believe such an order is justified simply because the defendant's mother may be willing to loan monies to the defendant.
In conclusion, the court grants the plaintiff's motion to reargue and for reconsideration and makes the following findings and enters the following orders:
1. The defendant is adjudged in contempt.
2. The previously found arrearage and award of counsel fees stand.
3. The previous payment order of $50.00 per month is vacated.
4. The court orders the defendant to pay $100.00 per week against the arrearage and $20.00 per week against counsel fees, commencing Monday, December 1, 1997, provided that the plaintiff shall give notice thereof to the defendant.
So ordered.
KAVANEWSKY, J.